1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTOPHER G.,[1]<br><br>              Plaintiff,<br><br>    v.<br><br>ANDREW SAUL, Commissioner of<br>Social Security,<br><br>              Defendant. | Case No. 2:19-cv-06150-AFM<br><br>**MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying his application for supplemental security income. In accordance with the Court's case management order, the parties have filed briefs addressing the merits of the disputed issues. The matter is now ready for decision.

### FACTUAL BACKGROUND

On August 1, 2011, Plaintiff protectively filed an application for Supplemental Security Income benefits, alleging disability beginning November 2007 due to a problem in his left shoulder, depression, posttraumatic stress disorder, obsessive

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

compulsive disorder, and bipolar disorder. (Administrative Record ["AR"] 159-165, 185-193.) Plaintiff's application was denied administratively, and an Administrative Law Judge ("ALJ") issued an adverse decision after a hearing, Plaintiff then challenged the ALJ's decision in this Court. *See* Case No. 2:14-cv-07207-PSG-AFM. The Court concluded that the ALJ erred in considering the opinion of Plaintiff's treating psychiatrist (Gregory E. Gray, M.D.) and the testimony of Plaintiff's mother (Patricia Terronez) and remanded the case to the Commissioner for further administrative proceedings.

A second hearing was held before an ALJ on February 12, 2018. Plaintiff, his mother, and a vocational expert ("VE") testified. (AR 456-503.)

In a decision dated August 3, 2018, the ALJ found that Plaintiff suffered from the same severe impairments as found in the prior decision, namely left shoulder acromioclavicular osteoarthritis status post decompression and reconstruction; status post left elbow surgery; neuropathic pain; left carpal tunnel and cubital tunnel syndrome; schizoaffective disorder; and history of methamphetamine abuse in reported remission. (AR 436.) After considering the record, the ALJ assessed Plaintiff with the residual functional capacity ("RFC") for light work as defined by 20 C.F.R. § 416.967(b) with the following additional limitations: Plaintiff is limited to occasional overhead reading left, non-dominant, upper extremity; frequent, but not constant gross handling with left upper extremity; and simple, routine tasks defined as SVP1 and SVP2 with limited public and co-worker interaction, i.e., incidental and superficial contact with public and co-workers, but can work side-by-side, report to supervisors and accept instructions, but verbal collaboration should not be a primary component. (AR 438.) Plaintiff had no past relevant work. Relying on the testimony of the VE, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy: night cleaner and photocopy machine operator. (AR 447.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 448.) The Appeals Council subsequently denied Plaintiff's request for review (AR 420-

426), rendering the ALJ's decision the final decision of the Commissioner.

**DISPUTED ISSUES**

1. Whether the ALJ properly considered the opinions of Plaintiff's treating physician and the State agency's non-examining physicians.

2. Whether the ALJ's residual functional capacity determination accurately reflected Plaintiff's limitations.

3. Whether the ALJ properly considered the lay testimony of Plaintiff's mother.

4. Whether the ALJ properly considered Plaintiff's subjective symptom testimony.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

**DISCUSSION**

Among his claims, Plaintiff contends that the ALJ erred by purportedly crediting the opinions of the State agency physicians yet failing to include all of those limitations in her RFC. For the following reasons, the Court agrees.

1

### 1. Relevant Medical Evidence[2]

2    Dr. Gray, a board-certified psychiatrist, began treating Plaintiff in February

3    2011. He diagnosed Plaintiff with schizoaffective disorder and methamphetamine

4    abuse. (AR 304.) Treatment notes from 2011 indicate that Plaintiff improved with

5    treatment, reporting better sleep and improvement in ideas of reference and

6    instability. Notes also reflect that Plaintiff was not violent or suicidal. (AR 364-366.)

7    On August 17, 2011, Dr. Gray completed an assessment in relation to Plaintiff's

8    disability claim. On that date, Plaintiff's mental status examination revealed normal

9    speech, guarded behavior, anxious mood, appropriate affect, no hallucinations or

10   illusions, goal directed thought process, moderately impaired judgment, and ideas of

11   persecution and reference. (AR 304-305.) Dr. Gray noted that Plaintiff believed

12   people stare at him, talk about him, and follow him with the intent to harm him.

13   Plaintiff acts upon these delusions, confronting and assaulting others. (AR 305.)

14   While Plaintiff's mood improved with antidepressants, there was difficulty treating

15   Plaintiff's ideas of reference and delusions of persecution, as well as impulse control.

16   (AR 306.) In Dr. Gray's opinion, Plaintiff had a poor ability to perform activities

17   within a schedule and maintain attendance; complete a normal workday and

18   workweek without interruptions from psychologically based symptoms; and respond

19   appropriately to changes in a work setting. (AR 306.)

20   Dr. Gray provided another medical source statement on June 13, 2012.

21   According to Dr. Gray, Plaintiff's symptoms include sleep disturbance, mood

22   disturbance, emotional lability, perceptual disturbances, delusions or hallucinations,

23   substance dependence, paranoia or inappropriate suspiciousness, and hostility and

24   irritability. (AR 326-327.) He opined that Plaintiff had a fair ability to understand

25   and remember detailed instructions, but a poor ability to carry out detailed

26   instructions. Plaintiff's abilities were "markedly" limited or "poor" in several areas

27

28   [2] Because the Court finds remand is necessary with respect to the ALJ's assessment of Plaintiff's
mental impairment limitations, the order focuses on the evidence concerning those impairments.

4

of mental functioning, including Plaintiff's ability to relate to relate and interact with supervisors, co-workers, and the public; maintain attendance; and complete a normal workday. According to Dr. Gray, Plaintiff's limitations had existed since 2009. (AR 325-333.)

In August 2012, Plaintiff's mother reported that Plaintiff was noncompliant with medications. (AR 366.) Notes from the following month indicate Plaintiff was not violent or suicidal. (AR 366.)

Plaintiff's February 11, 2013 mental status examination was essentially normal – he had no violent, homicidal or suicidal ideation; he was oriented; his memory, attention, concentration, and language were intact; his mood was euthymic but labile. Dr. Gray did notation of ideas of reference and poor judgment. (AR 355-357.) On the same date, Dr. Gray completed a form stating that he did not expect Plaintiff to be able to work. (AR 1120-1122.)

In April 2013, Dr. Gray noted that Plaintiff has poor compliance in taking his medications. Mental status examination was essentially normal. In particular, Plaintiff did not have violent, homicidal, or suicidal ideation. Dr. Gray noted that Plaintiff's reports of visual hallucinations were not consistent. (AR 401.)

In a letter dated June 28, 2013, Dr. Gray wrote that Plaintiff's primary diagnosis is schizoaffective disorder. He was taking carbamazepine twice daily for impulse control, as well as medication for depression. While his mood had improved, Plaintiff's other symptoms had note. He identified three examples of incidents where Plaintiff had become violent and attacked strangers due to delusions of reference. Those delusions had not responded to antipsychotic mediations, and Plaintiff now refused antipsychotics. His impulse control remained poor and his affect "can be labile." Dr. Gray opined that Plaintiff's delusions and poor impulse control rendered him unable to work and that those symptoms would make him a danger to coworkers or customers as he is unpredictably violent. (AR 1322.)

A mental status examination in September 2014 revealed Plaintiff was cooperative; his speech was normal; his thought processes and associations were intact. He had no violent or suicidal thoughts. Positive findings consisted of irritable mood, labile affect, distracted memory. (AR 1237.)

Dr. Gray completed another mental evaluation on December 5, 2014. Plaintiff reported that he had gone to a restaurant with his mother and he thought other patrons were staring at him or talking about him. As a result, he became angry, shouted, and wanted to fight with them. Plaintiff's mental status examination revealed agitated motor activity, normal speech, cooperative interview behavior. Plaintiff was oriented in all spheres, his memory was normal, and his concentration level was "slightly distracted." His mood was irritable, and his affect was labile. Plaintiff's thought process was tangential, he suffered from ideas of reference, persecutory beliefs, and his judgment was impaired. He did not have violent or suicidal thoughts. Dr. Gray indicated that Plaintiff used cannabis occasionally. As of that date, Plaintiff was compliant with medication. In Dr. Gray's opinion, Plaintiff had a good ability to understand, remember, and carry out simple instructions, but had poor ability to maintain concentration, attention and persistence; perform activities within a schedule and maintain regular attendance; complete a normal workday and workweek; and respond appropriately to changes in a work setting. (AR 1233-1236.)

January 2015 treatment notes again indicate Plaintiff had no violent or suicidal thoughts; his speech and behavior were normal; his thought processes and associations were intact; his mood was irritable; his affect was constructed; he was oriented; and his concentration was distracted. (AR 1244.)

Dr. Gray performed a mental status examination on February 8, 2016. He noted that Plaintiff was cooperative with no abnormal movements; his speech was normal; his thought processes and associations were intact; his mood was irritable and his affect congruent; he was alert and oriented; he had no violent or suicidal thoughts; his concentration was distracted; his memory was normal; and his insight/judgement

6

were fair. (AR 1332.) Plaintiff's mental status examination in July 2016 was the same except Plaintiff's mood was euthymic. (AR 1331.)

Dr. Gray completed a form in August 2016 in which he indicated that Plaintiff's mental impairment rendered him unable to engage in stress situations or engage in interpersonal relations, explaining Plaintiff's labile mood and his history of getting into physical altercations when stressed. (AR 1335.) In December 2016, Plaintiff reported panic attacks. His mental status examination revealed a depressed and irritable mood with labile affect. His concentration was distracted, and his speech was soft. (AR 1111.)

In February 2017, Plaintiff complained of violent nightmares which awoke him most nights. Other than a depressed mood, Plaintiff's mental status examination was normal. (AR 1110.) In May 2017, Plaintiff reported that his nightmares had resolved, medication helped his anxiety, and his mood was good. Plaintiff's mental status examination was normal in all areas. (AR 1109.) Similarly, in August 2017, Plaintiff reported his mood was stable, and his mental status examination was normal. (AR 1108.)

On January 30, 2018, Plaintiff had a follow-up examination with Dr. Gray. Plaintiff reported that he had walked to the store in August 2017 and while there, he thought two men were looking at him. Plaintiff confronted the men and was beaten up. According to Plaintiff, he was taken to the emergency room where he was combative. Plaintiff suffered bilateral retinal hemorrhages requiring laser treatment. (AR 1107.) Dr. Gray's mental status examination revealed slow speech; intact thought processes and associations; no violent or suicidal thoughts; delusions of reference; irritable mood; labile affect; normal concentration; forgetful memory; and poor judgment. (AR 1107.)

Dr. Gray completed another mental residual functional capacity statement on January 30, 2018. He noted that he had treated Plaintiff approximately four times a year. Dr. Gray opined that Plaintiff's mental impairment did not preclude his ability

to remember, understand, and carry out short and simple instructions; or his ability to make simple work-related decisions or request assistance. His mental impairment precluded performance of the following areas for 15% or more of an 8-hour workday: work in coordination or in proximity to others; complete a normal workday and workweek and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers; and travel in unfamiliar places or use public transportation. In addition, Dr. Gray opined that Plaintiff would be unable to work due to his limitations more than 30% of the work week and would be absent from work five or more days per month. (AR 1101-1105.)

<u>State agency physicians</u>

H. Skopec, M.D., reviewed the record and opined that Plaintiff is not significantly limited in his ability to understand, remember, and carry out short and simple instructions; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; and sustain an ordinary routine without special supervision. Dr. Skopec also opined that Plaintiff is moderately limited in eight areas of functioning including: (1) the ability to understand and remember detailed instructions; (2) the ability to carry out detailed instructions; (3) the ability to maintain attention and concentration for extended periods; (4) the ability perform within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) the ability to work in coordination or proximity to others without being distracted by them; (6) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (7) the ability to interact appropriately with the general public; peers; work in coordination with or proximity to others; and interact appropriately

1    with the general public; and (8) the ability to maintain socially appropriate behavior.

2    (AR 597-598.) State agency physician A. Garcia, M.D., rendered the same opinion

3    regarding Plaintiff's mental limitations. (AR 614-616.)

4    **2.  The ALJ's Decision**

5    In assessing Plaintiff's RFC, the ALJ discussed Dr. Gray's opinions in detail.

6    While she gave "some weight" to Dr. Gray's assessment that Plaintiff was able to

7    understand, remember, and carry out simple instructions, the ALJ rejected his

8    opinions that Plaintiff was markedly impaired in numerous areas of functioning. The

9    ALJ provided several reasons for her determination, including finding that Dr. Gray's

10   opinions were not supported by the record and contradicted by his own treatment

11   notes. (*See* AR 441-445.) On the other hand, the ALJ stated that she credited the

12   opinions of State agency physicians, Drs. Skopec and Garcia. (AR 445.)[3]

13   **3.  Relevant Law**

14   "In determining a claimant's RFC, an ALJ must consider all relevant evidence

15   in the record." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)

16   (quotations omitted). The RFC – and any resulting hypothetical presented to a

17   vocational expert – "must set out *all* the limitations and restrictions of the particular

18   claimant." *Valentine v. Comm'r Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir.

19   2009) (citation omitted, emphasis in original).

20   The ALJ is responsible for translating a claimant's condition and limitations

21   into an RFC that "adequately captures restrictions" to the claimant's ability to work.

22   *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). If an "RFC

23   assessment failed to include all of [the claimant's] credible limitations," the RFC –

24   and any subsequent opinion of a vocational expert – are "incomplete." *Bagby v.*

25   *Comm'r Soc. Sec.*, 606 F. App'x 888, 890 (9th Cir. 2015); *DeLorme v. Sullivan*, 924

26
27
28   [3] The Court notes, at Step Three of the sequential analysis, the ALJ found that Plaintiff had mild limitations in both his ability to understand, remember, and apply information and his ability to concentrate, persist, or maintain pace. (AR 437-438.) Consequently, there is some suggestion that the ALJ may have implicitly discounted at least some of the State agency physicians' opinions.

F.2d 841, 849 (9th Cir. 1991) ("expert's testimony has no evidentiary value" if not based on "all of claimant's limitations"). Numerous decisions in this District have found error with the failure to include in an RFC those moderate limitations to which the ALJ purported to afford weight. *See, e.g.*, *Padilla v. Colvin*, 2015 WL 3849128, at *6 (C.D. Cal. June 22, 2015) ("despite the ALJ's assertion that he afforded [physician's] opinion significant weight ..., the ALJ failed to explain why he apparently rejected and did not include in the RFC determination [physician's] moderate limitations in the ability to perform work activities on a consistent basis without special or additional supervision, and to complete a normal workday or work week due to her mental condition"); *Ortiz v. Colvin*, 2015 WL 7454509, at *4 (C.D. Cal. Nov. 23, 2015) (error where medical opinion restricting contact with numerous groups led to RFC restricting contact with one group without adequate explanation).

**4. Analysis**

Plaintiff contends that although the ALJ's decision purported to credit the opinions of Drs. Skopec and Garcia, it failed to fully account for those opinions in the RFC assessment. Specifically, Plaintiff argues that the ALJ failed to include the opinions that he is moderately limited in the following four areas of mental functioning: (1) the ability to maintain attention and concentration for extended periods; (2) the ability to maintain activity within a schedule and maintain regular attendance; (3) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and (4) the ability to maintain socially appropriate behavior. (ECF No. 18 at 20-21.) The Commissioner argues that the ALJ's RFC fully incorporated these opinions. (ECF No. 19 at 8.)

An ALJ's RFC assessment may sufficiently account for a physician's opinion regarding limitations without using the same language as the physician. *See Stubbs-Danielson*, 539 F.3d at 1173-1174. For example, an RFC may account for a physician's opinion that the claimant suffers from moderate difficulties in

concentration and persistence by assessing an RFC restricting the claimant to simple, routine, repetitive tasks. *See Hughes v. Colvin*, 599 F. App'x 765, 766 (9th Cir. 2015); *Stubbs-Danielson*, 539 F.3d at 1171. Similarly, an RFC for independent work with no more than occasional public interaction adequately accommodates a physician's opinion that the claimant is moderately limited in social functioning. *Hughes*, 599 F. App'x at 766.

As set forth above, the ALJ assessed Plaintiff with an RFC to perform work involving simple, routine tasks with limited public and co-worker interaction. (AR 438.) This RFC fairly accommodates moderate limitations in the ability to maintain attention and concentration for extended periods and the ability to maintain socially appropriate behavior. *See, e.g., Williams v. Colvin*, 2016 WL 7480245, at *7-8 (C.D. Cal. Dec. 29, 2016) (ALJ adequately accounted for medical opinion that plaintiff suffered moderate difficulties in concentration, persistence, and pace by assessing plaintiff with the mental RFC to perform "simple, repetitive tasks"). It does not, however, address moderate limitations in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances. Nor does the ALJ's RFC address moderate limitations in completing a normal workday or workweek or performing at a consistent pace without an unreasonable number and length of rest periods. *See Morinskey v. Astrue*, 458 F. App'x 640, 641 (9th Cir. 2011) (ALJ erred by failing to address physician's opinion that the claimant was moderately impaired in the ability to maintain regular attendance, sustain an ordinary routine, and complete a normal work day or workweek without interruption from his bi-polar disorder; furthermore, restriction to "low stress" jobs did not encompass said limitations); *Raymond v. Berryhill*, 2018 WL 3691842, at *6 (C.D. Cal. Aug. 2, 2018) (restriction to unskilled work may have encompassed moderate limitations in concentration, persistence, and pace, but it did not sufficiently account for "moderate limitations in performing routine work duties and maintaining consistent attendance in the workplace"); *Wiles v. Berryhill*, 2017 WL 5186333, at *3 (C.D. Cal. Nov. 8,

2017) (limitation to simple and repetitive tasks did not sufficiently account for moderate limitations "performing work activities consistently without special instructions; maintaining regular attendance and completing a normal workday without interruption"); *Atkinson v. Colvin*, 2015 WL 5840210, at *3 (C.D. Cal. Oct. 5, 2015) (RFC restriction to non-complex tasks "may encompass the concentration, persistence, and pace limitations assessed" by physician, but did "not sufficiently account for Plaintiff's moderate limitations in performing activities within a schedule, maintaining regular attendance in the workplace, or completing a normal workday and workweek without interruption").[4] In light of this, the Court rejects the Commissioner's assertion that the ALJ's RFC fully accounted for the opinions of Drs. Skopec and Garcia.

While moderate limitations do not necessarily indicate that Plaintiff is unable to perform all work activity, the ALJ was required to either include these limitations in Plaintiff's RFC assessment or provide legally sufficient reasons for rejecting them. *See Wiles*, 2017 WL 5186333, at *3 (although moderate limitations in various areas of functioning, such as in the ability to maintain regular attendance or to complete a normal workday and workweek are not per se disabling, ALJ erred in assessing RFC without either including the limitations or offering specific reasons for rejecting opinion). Here, the ALJ did not explicitly reject these particular opinions and provided no reason for failing to include the limitations in her RFC assessment.

---

[4] The Court recognizes that several other decisions have reached differing conclusions. Those cases have not provided detailed reasons for their results, and the Court does not find them persuasive. *See, e.g, Lewis v. Colvin*, 2015 WL 4164682, at *5 (C.D. Cal. July 9, 2015) (ALJ did not err in translating "moderate limitations in performing work activities on a consistent basis without special or additional supervision, completing a normal work day or work week, and concentration, persistence and pace" into restriction to "simple, routine, repetitive tasks"); *Amloian v. Colvin*, 2016 WL 7223260, at *6 (C.D. Cal. Dec. 13, 2016) (ALJ's RFC assessment limiting the plaintiff to "simple, routine tasks, which are object oriented in a habituated setting" accommodated his moderate limitations in performing work activities without special or additional supervision, completing a work week, and managing stress).

Finally, the Court cannot conclude that the error was harmless. In posing a hypothetical claimant to the VE, the ALJ did not include moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances or in the ability to complete a workday and workweek without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods. (*See* AR 495-496.) Moreover, in response to questions from Plaintiff's counsel, the VE opined that an individual whose mental limitations caused him or her to be unproductive for more than 10% of the workday would be unemployable. (AR 498-500). At least on this record, the Court cannot conclude that the error was harmless. *See Adkins v. Berryhill*, 2018 WL 4735714, at *4 (C.D. Cal. Sept. 28, 2018) (error was not harmless because, in failing to either expressly reject or incorporate physician's restrictions into RFC or the hypothetical questions posed to the VE, the VE's opinion regarding claimant's ability to perform work lacked evidentiary value); *Devery v. Colvin*, 2016 WL 3452487, at *5 (C.D. Cal. June 22, 2016) (ALJ's erroneous failure to provide reasons for rejecting physician's limitations was not harmless because VE did not testify that a hypothetical person with those limitations could work).

## REMEDY

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-1178 (9th Cir. 2000). "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Indeed, Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next

13

review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record is not fully developed, and factual issues remain outstanding. The issues concerning Plaintiff's alleged disability – including the moderate limitations opined to by Drs. Skopec and Garcia – "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act). Accordingly, the appropriate remedy is a remand for further administrative proceedings.[5]

## ORDER

IT IS THEREFORE ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED:  4/30/2020

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

---

[5] In light of this conclusion, the Court declines to resolve Plaintiff's remaining claims. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."). It is not the Court's intent to limit the scope of the remand.

14